UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GEORGE FIELDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:21-cv-361 |
| | ) |
| TOWN OF MERRILLVILLE, *et al*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion for Judgment on the Pleadings [DE 22] filed by the defendants[1], Joseph Petruch, Jeff Rice, and Allison Ellis, on April 18, 2022. For the following reasons, the motion [DE 22] is **GRANTED.**

*Background*

The plaintiff, George Fields, filed this action against the defendants, the Merrillville Police Department (the Department), the Merrillville Police Commission (the Commission), the Town of Merrillville (the Town), former Police Chief Joseph Petruch, Detective Allison Ellis, and Commander Jeff Rice, alleging violations of the Civil Rights Act, 42 U.S.C. § 1983, and Indiana state law. The plaintiff initiated this lawsuit in Indiana State Court on November 3, 2021, and the defendants removed it to this court on November 17, 2021.

The pertinent facts are undisputed. Fields currently is a police officer with the Merrillville Police Department. He has been employed by the Department since October 29, 1995. In November 2019, Fields was placed on administrative leave without pay due to allegations that he

---

[1] On May 3, 2022, the Town of Merrillville, the Merrillville Police Department, and the Merrillville Police Commission joined in on the instant Motion [DE 25].

had engaged in criminal conduct. The reason he was placed on administrative leave was due to the fact that "concern had been expressed."

Fields' alleged criminal conduct included allegations of domestic violence. The allegations were investigated internally at the direction of Defendants Petruch, Rice, and Ellis. Both Fields and the defendants indicate that an internal investigation is not a common practice of Lake County police departments and that investigations involving police misconduct typically are referred to an outside law enforcement agency.

The Merrillville Police Department's investigation included victim interviews and reviewing medical records, 911 calls, and photographs of victim's injuries. At the conclusion of the investigation, felony criminal charges were filed against Fields in state court by the Lake County Prosecutor. The criminal charges were reported to the press. Ultimately, the charges were dropped, and the case was dismissed. The record does not reflect why the state prosecutor declined to proceed further.

In addition to criminal charges, as a result of being placed on administrative leave, disciplinary charges also were brought against Fields. The disciplinary charges sought his termination. The Commission never held a hearing, but Fields was reinstated as a police officer in January 2021. Again, nothing in the record reflects the reason for this decision.

Fields has filed the instant case against the defendants claiming that their handling of the investigation into his alleged criminal conduct was in violation of his constitutional rights. His federal claims include false arrest and deprivation of his procedural due process rights by way of malicious prosecution. He also claims that the defendants' actions resulted in various violations

of Indiana law including intentional infliction of emotional distress, defamation, and failing to adhere to **Ind. Code § 36-8-3-4(n)**[2].

As stated above, the defendants filed the instant motion on April 18, 2022. In his response, Fields conceded that there were no viable claims against the Department and the Commission.  He also withdrew his claim for Negligent Infliction of Emotional Distress (NIED) against all defendants. The court dismissed the Commission and the Department from this case, as well as the NIED claim, on November 9, 2022.

*Discussion*

As an initial matter, attached to the instant Motion is the Information [DE 23-1] related to Fields' criminal case.  Similarly, Fields attached the related Probable Cause Affidavit to his Response [DE 30-1].

**Federal Rule of Civil Procedure 12(d)** provides that "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  However, the Seventh Circuit has recognized a narrow exception to this rule.  District courts are entitled to take judicial notice of outside "matters of public record without converting a motion for failure to state a claim into a motion for summary judgment" if they are "not subject to reasonable dispute and either generally known within territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." ***General Elec. Capitol Corp. v. Lease Resolution Corp.***, 128 F.3d 1074, 1080 (7th Cir. 1997); ***Ennenga v. Starns***, 677 F.3d 766, 773-74 (7th Cir. 2012).

---

[2] Fields inadvertently cited Ind. Code § 36-8-3.5-19 in his Complaint.

3

While acceptable outside matters have included public court documents, "courts generally cannot take judicial notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed." ***Lopez v. Pastrick***, 2011 WL 2357829, at *4 (N.D. Ind. June 8, 2011) (*quoting* ***General Elec. Capitol Corp.***, 128 F.3d at 1082 n.6)); ***Opoka v. I.N.S.***, 94 F.3d 392, 395 (7th Cir. 1996); ***Fedex Ground Package System, Inc., Employment Practices Litig.***, 2010 WL 1253891, at *6 (N.D. Ind. Mar. 29, 2010) (finding that "the court can take judicial notice of filings in other proceedings to establish the fact of such litigation and related filings"); ***ABN AMRO, Inc. v. Capital Int'l Ltd.***, 2007 WL 845046, at *9 (N.D. Ill. March 16, 2007) (holding that "judicial notice is generally not for the truth of the matters asserted in a court document").  Ultimately, the Seventh Circuit cautions that "courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts." ***General Elec. Capitol Corp.***, 128 F.3d at 1081.

**Federal Rule of Evidence 201** describes the kinds of facts that may be judicially noticed as follows: "(1) facts that are generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite." ***Mayes v. City of Hammond, Ind.***, 2006 WL 1765407, at *5 (N.D. Ind. June 21, 2006) (Cherry, Magistrate Judge) (taking judicial notice of a criminal conviction but declining to take judicial notice of underlying DNA evidence or its validity).  Both the Information and Probable Cause Affidavit fit these criteria: each one is publicly available, is not factually disputed, and is derived from sources whose accuracy cannot reasonably be questioned. *See* ***Swanigan v. City of Chi.***, 881 F.3d 557 (7th Cir. 2019) (taking judicial notice of facts from a

prior proceeding within the same case); ***Estate of Brown v. Arc Music Group***, 523 Fed.Appx. 407, 410 (7th Cir. 2013) (taking judicial notice of a settlement agreement); ***Scholes v. Lehmann***, 56 F.3d 750, 762 (7th Cir. 1995) (taking judicial notice of facts recited in a plea agreement); ***Philips Med. Sys. Int'l v. Bruetman***, 982 F.2d 211, 215 (7th Cir. 1992) (taking judicial notice of a default judgment); ***Ryan v. Phillip Morris USA, Inc.***, 2007 WL 270119, at *1 (N.D. Ind. Jan. 26, 2007) (taking judicial notice of a probate file).

Additionally, the court gave the parties the option to file supplemental briefs and to treat this motion as one for summary judgment. The defendants requested that the court take judicial notice of the attached documents instead, and Fields never responded to the defendants' request. Therefore, the court takes judicial notice of the Information and the Probable Cause Affidavit and will evaluate the instant Motion under the **Rule 12(c)** standard.

**Federal Rule of Civil Procedure 12(c)** provides that a party may move for judgment on the pleadings after the complaint and answer have been filed. *See* ***Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co.***, 521 F.3d 743, 746 (7th Cir. 2008). **Rule 12(c)** motions are evaluated under the same standard as a motion to dismiss under **Rule 12(b)(6)**, which tests the sufficiency of the complaint and not the merits of the suit. *See* ***Gibson v. City of Chi.***, 910 F.2d 1510, 1520 (7th Cir. 1990).

As stated above, Fields has asserted that the defendants violated 42 U.S.C. § 1983 when they falsely arrested him, engaged in malicious prosecution[3] against him, and violated his due process rights. He also has alleged three Indiana state law claims: intentional infliction of emotional distress, defamation, and a violation of Ind. Code § 36-8-3.5-19. As to the § 1983

---

[3] The Complaint is unclear as to whether Fields is alleging a malicious prosecution claim pursuant to Indiana law or federal law. As a result, the court will evaluate the validity of the claim under both Indiana and federal law.

claims, the defendants argue that they are entitled to qualified immunity because their actions did not violate "clearly established constitutional rights."

The doctrine of qualified immunity "shields public officials 'from undue interference with their duties and from potentially disabling threats of liability.'" ***Smith v. Finkley***, 10 F. 4th 725, 737 (7th Cir. 2021) (quoting ***Harlow v. Fitzgerald***, 457 U.S. 800, 806 (1982)). Qualified immunity "is more than a mere defense to liability, it provides *immunity from suit*." ***Smith***, 10 F. 4th at 737 (internal quotations omitted) (emphasis in original). Therefore, "once the defense is raised, it becomes the plaintiff's burden to defeat it." ***Smith***, 10 F.4th at 737 (internal quotations omitted).

The Supreme Court has established a two-step process for resolving qualified immunity claims in ***Saucier v. Katz***, 533 U.S. 194, 199 (2001). The first step is whether a constitutional right has been violated on the facts alleged, and second, assuming a violation is established, whether the right was clearly established at the time of the alleged violation. 533 U.S. 194 at 200; *see* ***Pearson v. Callahan***, 555 U.S. 223,231 (2009) (explaining "whether the facts alleged show the officer's conduct violated a constitutional right … *must* be the initial inquiry in every qualified immunity case") (internal quotations omitted); ***Tolan v. Cotton***, 572 U.S. 650, 655-56 (2014) (per curiam). "If *either* inquiry is answered in the negative, the defendant official is protected by qualified immunity." ***Koh v. Ustich***, 933 F.3d 836, 844 (7th Cir. 2019) (emphasis in original).

However, "because a qualified immunity defense so clearly depends on the facts of a case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." ***Reed v. Palmer***, 906 F.3d 540, 548 (7th Cir. 2018) (internal quotations omitted); ***Alvarado v. Litscher***, 267 F.3d 648, 651 (7th Cir. 2001). Though, qualified immunity may be

appropriate at the pleadings stage if "the plaintiff asserts the violation of a broad constitutional right that has not been articulated at the time the violation is alleged to have occurred." ***Hardeman v. Curran***, 933 F.3d 816, 823 (7th Cir. 2019) (quoting ***Jacobs v. City of Chicago***, 215 F.3d 758, 765 n.3 (7th Cir. 2000)). Since a Rule 12(b)(6) motion normally is based on the complaint itself, "the plaintiff need only state a claim to relief that is plausible on its face." ***Reed***, 906 F.3d at 548. Therefore, all the plaintiff must do is "include enough details about the subject matter of the case to present a story that holds together." ***Reed***, 906 F.3d at 548 (internal quotations omitted).

All that has been filed in this case is the Complaint, Response, and this Motion for Judgment on the Pleadings. Therefore, applying the two-step process for resolving the defendants' qualified immunity defense is premature. The court is left with determining whether the plaintiff's federal claims are plausible on their face. The only facts before the court are those alleged in the complaint, which the court is "obliged to accept as true." ***Kernats v. O'Sullivan***, 35 F.3d 1171, 1175 (7th Cir. 1994).

**Federal Rule of Civil Procedure 12(b)(6)** allows for a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Allegations other than those of fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement" to show that a pleader is entitled to relief. *See* ***Cincinnati Life Ins. Co. v. Beyrer***, 722 F.3d 939, 946 (7th Cir. 2013). The Supreme Court clarified its interpretation of the Rule 8(a)(2) pleading standard in a decision issued in May 2009. While Rule 8(a)(2) does not require the pleading of detailed allegations, it nevertheless demands something more "than an un-adorned, the-defendant-unlawfully-harmed-me accusation." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009). In order to survive a Rule 12(b)(6) motion, a

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570); *Cincinnati Life Ins.*, 722 F.3d at 946 ("The primary purpose of [Fed.R.Civ.P. 8 and 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims") (quoting *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011)); *Peele v. Clifford Burch*, 722 F.3d 956, 959 (7th Cir. 2013) (explaining that one sentence of facts combined with boilerplate language did not satisfy the requirements of Rule 8); *Joren v. Napolitano*, 633 F.3d. 1144, 1146 (7th Cir. 2011).  This pleading standard applies to all civil matters.  *Iqbal*, 556 U.S. at 684.

The decision in *Iqbal* discussed two principles that underscored the Rule 8(a)(2) pleading standard announced by *Twombly*.  *See Twombly*, 550 U.S. at 555 (discussing Rule 8(a)(2)'s requirement that factual allegations in a complaint must "raise a right to relief above the speculative level").  First, a court must accept as true only *factual* allegations pled in a complaint—"[t]hreadbare recitals of the elements of a cause of action" that amount to "legal conclusions" are insufficient.  *Iqbal*, 556 U.S. at 678.  Next, only complaints that state "plausible" claims for relief will survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  If the pleaded facts do not permit the inference of more than a "mere possibility of misconduct," then the complaint has not met the pleading standard outlined in Rule 8(a)(2).  *Iqbal*, 556 U.S. at 678–79; *see* *Brown v. JP Morgan Chase Bank*, 2009 WL 1761101, at *1 (7th Cir. June 23, 2009) (defining "facially plausible" claim as a set of facts that allows for a reasonable inference of liability).  The Supreme Court has suggested a two-step process when considering a motion to dismiss.  First, any "well-pleaded factual allegations" should be assumed to be true by the court.  Next, these allegations can be reviewed to determine if they "plausibly" give rise to a claim that

would entitle the complainant to relief.  *Iqbal*, 556 U.S. at 678–79; ***Bonte v. U.S. Bank, N.A.***, 624 F.3d 461, 465 (7th Cir. 2010).  Reasonable inferences from well-pled facts must be construed in favor of the plaintiff.  ***Murphy v. Walker***, 51 F.3d 714, 717 (7th Cir. 1995); ***Maxie v. Wal-Mart Store***, 2009 WL 1766686, at *2 (N.D. Ind. June 19, 2009) (same); ***Banks v. Montgomery***, 2009 WL 1657465, at *1 (N.D. Ind. June 11, 2009) (same).

**42 U.S.C. § 1983** provides that "a person may not be deprived of any constitutional right by an individual acting under color of state law … authoriz[ing] claimants to sue persons in their individual capacities who are alleged to have violated such rights." ***Lewis v. Downey***, 581 F.3d 467, 472 (7th Cir. 2009).   The Fourth Amendment to the U.S. Constitution provides in relevant part "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." **U.S. Const. amend. IV**.

Fields' claims, including false arrest and malicious prosecution, that his constitutional rights were violated are all based on the premise that had the defendants engaged in a proper investigation, they would have been found that no probable cause existed. By a "proper" investigation, Fields alleges that the investigation should have been submitted to an external agency, rather than being conducted internally.

Fields' constitutional claims fail for several reasons. First, Fields does not allege that there was no probable cause, a prerequisite for both a malicious prosecution claim and a false arrest claim under **§ 1983**, for his arrest or subsequent criminal charges.  Instead, he argues that the way in which probable cause was established was improper. However, there is no constitutional right to an external investigation, which Fields claims is the reason the finding of probable cause is flawed.  See ***Davis v. Owens***, 973 F.2d 574, 577 (7th Cir. 1992) (holding that

9

the plaintiff has established "nothing more than inefficient police work; however, inefficient police work does not give rise to a constitutional claim"). If Fields had raised an argument that the probable cause itself was flawed, that argument also would fail.

Probable cause is a "common-sense inquiry" that is established "whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." **Leaver v. Shortess**, 844 F.3d 665, 670 (7th Cir 2016). The Probable Cause Affidavit that Fields attached to his Response explains that it was based upon interviews with the victim, 911 calls, medical records, and photographs of injuries. The Seventh Circuit has held that "so long as a reasonably creditable witness or victim informs the police that someone has committed …a crime, the officers have probable cause to place the alleged culprit under arrest … and that once such a reasonably credible complaint has been made, the existence of probable cause to arrest does not depend upon the actual truth of the complaint." **Woods v. City of Chicago**, 234 F.3d 979, 987 (7th Cir. 2000) (internal quotations omitted). Here, the Probable Cause Affidavit includes the victim's accounts of several incidences of domestic violence by Fields including a time when "Fields placed his hands on her throat and began to choke her" and "grabbed her by the throat and threw her into the washer and dryer causing her to hit her face." [DE 30-1]. Additionally, officers observed injuries on the victim as well as photographs she showed them of previous injuries alleged to have been inflicted by Fields. Even without the victim's complaints, the 911 calls and observations of the victim's injuries by police would have been sufficient to establish probable cause.

Fields' Complaint consists of 37 rhetorical paragraphs covering 5.5 pages. Although Fields has claimed that an external investigation would have demonstrated a lack of probable cause, he has not identified that evidence. More importantly, he has not denied that he actually

committed the acts of domestic violence that he was accused of.  The prosecutor has the discretion to dismiss criminal charges for any reason, often at the request of the victim.  A dismissal of charges does not mean that the defendant is innocent and has been wrongly accused.

In *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989), the Seventh Circuit held that "[r]egardless of the defendants' motives toward the plaintiff, the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." But, if "the finding of probable cause is based on the defendant's intentional misrepresentation or concealment of material facts, the plaintiff may be able to proceed on a Fourth Amendment claim challenging the reasonableness of the arrest." *Schertz*, 875 F.3d at 582; *Luellen v. City of East Chicago*, 350 F.3d 604, 611-613 (7th Cir. 2003).  Fields does not claim that the defendants concealed or misrepresented facts actually known to them in establishing probable cause for his arrest and subsequent charges.  Therefore, his **§ 1983** claims fail.[4]

Fields' Complaint also contains state law claims including violation of Ind. Code § 36-8-3-4(n), IIED, defamation, and malicious prosecution. **Ind. Code § 36-8-3-4(n)** states that:

> If [a police officer] is subject to criminal charges, the board may place the [officer] on administrative leave until the disposition of the criminal charges in the trial court. Any other action by the board is stayed until the disposition of the criminal charges in the trial court. An administrative leave under this subsection may be with or without pay, as determined by the board. If the [officer] is placed on leave without pay, the board, in its discretion, may award back pay if the [officer] is exonerated in the criminal matter.

Fields alleges that his "statutory rights were violated [] [because the defendants] fail[ed] to provide an explanation for the decision of suspension as required by statute," but that it did

---

[4] Though unclear from the Complaint, if Fields is alleging a malicious prosecution claim under Indiana law, it fails for the same reason the federal claim does, probable cause has been established.

11

allege that "concern ha[d] been expressed rather than providing an explanation for the decision…" Fields cites **Ind. Code § 36-8-3.5-19** to support his position:

> In addition to the disciplinary powers of the commission, the chief of the department, may, without a hearing, reprimand or suspend without pay a member …
>
> ****
>
> If a chief reprimands a member in writing or suspends a member, the chief shall, within forty-eight (48) hours, notify the commission in writing of the action and the reasons for the action …

The defendants argue that the decision to place a Merrillville police officer on administrative leave rests solely with the Merrillville Police Commission. Nonetheless, the defendants claim that there is no protectable property interest in a police officer's salary while the officer is on leave pending criminal charges, and therefore he was not entitled to a pre-deprivation hearing. In his response to the instant motion, Fields claims that the defendants' "acknowledgment that no hearing was held" provides support that **§ 36-8-3.5-19** was violated.

As an initial matter, **§ 36-8-3.5-19** does not require that a hearing be held:

> In addition to the disciplinary powers of the commission, the chief of the department, may, *without a hearing*, reprimand or suspend without pay a[n] [officer] …
>
> ***
>
> A[n] [officer] who is reprimanded in writing or suspended under this section may, within forty-eight (48) hours after receiving notice of the reprimand or suspension, request in writing that the commission review the reprimand or suspension and either uphold or reverse the chief's decision. At its *discretion*, the commission *may* hold a hearing during this review … (emphasis added).

Additionally, Fields did not allege in the Complaint that his rights were violated because a hearing was not held. Therefore, it is improper for him to raise this argument now. However, if he had raised it in the Complaint, the argument still would fail as the Supreme Court has held that "[d]ue process is flexible … [and] on many occasions, … a State must act quickly, or where it would be impractical to provide predeprivation process,

12

postdeprivation process satisfies the requirements of the Due Process Clause." ***Gilbert v. Homar***, 520 U.S. 924, 930 (1997). Therefore, the "proposition that due process *always* requires the State to provide a hearing prior to the initial deprivation of property" has been "rejected." ***Gilbert***, 520 U.S. at 930 (internal quotations omitted) (emphasis in original).

Contrary to the defendants' assertion, **§ 36-8-3.5-19** does state that "[i]n additional to the disciplinary powers of the commission, the *chief of the department* may, without a hearing, reprimand or suspend without a pay a[n] [officer] …" (Emphasis added). Therefore, the defendants' argument that only the Commission had the authority to order leave without pay is incorrect. Nonetheless, Fields' allegation that the explanation for his suspension "only alleged [that] 'concern ha[d] been expressed,'" and therefore "was impermissibly vague," violating **§ 36-8-3.5-19**, is a legal conclusion that contains no factual support. Fields' opinion that the explanation was insufficient under Indiana law does not state a claim for which relief can be granted.

Count III of Fields' Complaint alleges that the defendants' actions in this case have caused him "emotional distress." More specifically, he claims that he "suffered tremendous humiliation and embarrassment" by the "knowing and intentional conduct" by all of the named defendants towards him. Under Indiana law, in order to state a claim for IIED, the plaintiff must show that the defendant (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused (4) severe emotional distress to another. ***Branham v. Celadon Trucking Services, Inc.***, 744 N.E.2d 514, 523 (Ind. App. 2001). Though the bar is low, Fields two sentences in the Complaint that related to his emotional distress state nothing more than he endured emotional distress and it was caused by the acts of the defendants. Fields does not allege what intentional acts of the defendants caused his emotional distress or how the emotional

13

distress he experienced was severe enough to state a plausible claim for IIED. *See* ***Ali v. Alliance Home Health Care***, LLC, 53 N.E. 3d 420, 433 (Ind. Ct. App. 2016) (holding that "the requirements to prove [] [IIED] are rigorous and at its foundation is intent to harm the plaintiff emotionally") (internal quotations omitted); ***Marnocha v. City of Elkhart***, 2017 WL 2645730, at *2 (N.D. Ind. June 19, 2017) (finding that for an IIED "claim to survive, one must read the allegations of the complaint and conclude that the conduct was truly outrageous"). As previously stated, probable cause existed to believe Fields was guilty of domestic battery. Given that finding, it is doubtful that he could allege any facts to support this claim. Accordingly, his claim for IIED also fails.

Finally, Fields claims that he was defamed "as a result of the malicious acts of [the] [d]efendants which caused false criminal charges to be filed against [him] which was reported by both local news medial outlets, The Northwest Indiana Times and the Post-Tribune." [DE 3 at pg. 4]. The defendants argue that the defamation claim fails because Fields does not allege that any of the named defendants made the defamatory publication. Rather, the local news media outlets published the information. In response, Fields points to the Probable Cause Affidavit. He claims that Detective Ellis reviewed other police reports, which allegedly stated that the victim's injuries were the result of self-harm but failed to include that information in the Probable Cause Affidavit. How this could be a sufficient basis for a defamation claim is troubling.

Under Indiana law, a defamatory communication is either "defamatory *per se*" or "defamatory *per quod*." ***Kelley v. Tanoos***, 865 N.E.2d 593, 596 (Ind. 2007). For either claim, a plaintiff must demonstrate "(1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." ***Kelley***, 865 N.E.2d at 597 (*citing* ***Schrader v. Eli Lilly and Co.***, 639 N.E.2d 258, 261 (Ind. 1994)). However, "[m]alice is not a required element of a defamation

claim between private individuals unless the alleged defamatory statement relates to a matter of public concern." *Charles v. Vest*, 90 N.E.3d 667, 672 (Ind. Ct. App. 2017) (*citing* *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 489 n.3 (Ind. Ct. App. 2017)). A defamatory communication is published when it is "communicated to a third person or persons." *School City of Hammond Dist. v. Rueth*, 71 N.E.3d 33, 43 (Ind. Ct. App. 2017) (*quoting* *Bals v. Verduzco*, 600 N.E.2d 1353, 1354 (Ind. 1992)). To constitute defamation *per se*, the communication must impute "(1) criminal conduct, (2) a loathsome disease, (3) misconduct in a person's trade, profession, office, or occupation, or (4) sexual misconduct." *Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (*citing* *Kelley*, 865 N.E.2d at 596). "In contrast, if the words used are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence, they are considered defamatory *per quod*." *Dugan,* 929 N.E.2d at 186 (*citing* *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999)).

As an initial matter, Fields is not suing the proper party if he believes, as he claims, that he has been defamed due to the articles published in the local media outlets. The defendants do not work for or have any say in what is published in the Northwest Indiana Times and the Post-Tribune. And, even if he had named the correct party, the one sentence devoted to the defamation claim in the Complaint does not come close to satisfying the relaxed pleading standards of **Federal Rule of Civil Procedure 8(a)(2)**.

Finally, although it is unclear from the Complaint whether Fields is alleging that the information used by the local news media outlets was the product of proceedings in the criminal case, "Indiana as long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements … providing actors in judicial proceedings with the freedom to participate without fear of future

defamation claims." *Fountain v. Musik, Peeler & Garrett, a Partnership*, 2013 WL 5671059, at *3 (N.D. Ind. Oct. 17, 2013) (*citing* **Hartman v. Keri**, 883 N.E.2d 774, 777 (Ind. 2008)). Accordingly, statements made during the criminal proceedings, in relation to the evidence giving rise to the finding of probable cause, are protected.

Based on the foregoing reasons, the Motion for Judgment on the Pleadings [DE 22] is **GRANTED.** This case is now closed.

ENTERED this 15th day of December, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge